Good morning, Your Honors. Patrick Ford on behalf of the appellant, Clifton Maxwell. May it please the Court, I'd like to reserve two minutes for rebuttal, if I may. Your Honors, this is a... Abuse position. It is. It's a prisoner. Okay. Correct. And this is a disturbing case, Your Honor, complicated by facts involving mental health issues. But it's not a difficult case. The evidentiary hearing that was ordered by this Court back to the Federal District Court produced results which confirm our claim that at the time of Mr. Maxwell's trial, there was an overwhelming amount of evidence that he was mentally incompetent. Before you get into all that evidence, if that's where you're headed, would you explain to me what you understood the District Court was to do on remand? The District Court was to conduct a hearing to determine the order respectfully, or at least as I read it, was not a model of clarity. But it essentially asked the District Court to find facts that were known to the trial court at the time of the trial or knowable at the time. That would have led a reasonable jurist to conclude that there was some doubt. That would have given the jurist whether there was information correct. About whether or not this guy was competent. Correct. That's sufficient to prompt the judge to conduct a competency hearing. That's correct. So there was – so the remand was not for the purpose of doing a retrospective competency determination. No, and those are always difficult. But I think that's what – that's the effect that it actually had. Assuming that we find now that there was substantial evidence of incompetence, a question – and the Court were to grant the writ, the question might be whether or not we should send the case back. At some point, a determination should be made first as to whether there should be a retrospective competency determination. If that's not possible, then go ahead and set the case for trial. But I think the impact of the hearing that was actually held, I think what – in reality, that that was kind of a de facto competency hearing. So given the record that was before the superior court judge. Correct. At the time of the trial in January of – what was it? 1998. 1998. And the additional information that was learned in the district court proceedings on remand. Right. What was before the trial court judge that should have prompted a reasonable jurist in his situation to have doubt about the defendant's competency? There were things that were known and knowable, Your Honor. And that's the question, whether or not he – it's our position that on some level, and although we don't ascribe any bad faith to the Court, we do think that there was a certain amount of legal ostracism involved in that he was willfully blind to facts that would have clearly required the hearing. What was – Well, he had a prior competency determination. Correct. He had determined – About a year old. Right. The evidence that the Court knew or should have known that was easily known. Mr. Maxwell spent the first portion of his trial having been involuntarily committed by the State. He was physically located in the psychiatric unit of the State hospital after the State had to prove its burden that he was mentally incompetent. The Court was aware of this. The two things which are most clearly the best evidence that we can present in this case, Your Honor, and I won't tax the Court with a laundry list of the evidence that was presented, though it was overwhelming. At the time of his trial, he was examined – Mr. Maxwell was examined by several physicians, mental health physicians who did exhaustive examinations, not like the 1368 reviews that are about an hour long and took place 18 months prior to the trial, but this was during trial. They did exhaustive examinations. The doctors unanimously concluded that Mr. Maxwell was severely mentally ill. They found that he was psychotic, delusional, that he was suffering from hallucinations at the time of his trial. And the second most important fact is – He was banging his head against the wall. Lots of things, Your Honor. Disoriented as to time and place. But the second fact that I really want to impress upon this Court is at the time of his trial, while he was involuntarily committed in the psychiatric ward, committed by the State, the doctors as part of his treatment ordered that his hands and legs be tied down and that he be subjected to massive doses of antipsychotic medication. Either of these facts, the facts of the unanimous findings of the physicians who examined him at the time of trial or the evidence of the involuntary medication, either of these alone would have required the trial court to conduct a hearing. Instead, the trial court – and in the magistrate's findings, we see that the trial court clung to its fixed belief that because of these stale – what we believe are stale, certainly they were not recent. These 18-month-old psychiatric reports and counsel's refusal to declare a doubt, it was because of these things. These are the reasons why the trial court held the way it did, but they don't excuse the legal error in having done that. I'd like to point out just three facts to the Court. One actually is a fact in two points of law that I think are important for the resolution of this issue. The fact is not all that clear in the record, but I'd like for this Court to have clarity on that point, is that the trial court had very little physical contact with Mr. Maxwell. The case had been recently transferred to Judge Major's court, and the judge only saw him on two brief occasions, on January 6th and January 8th, before making his determination. I think that's important. And the two legal points that I'd like to bring up, the first is a ruling that we've heard from this Court on a couple of occasions. DiCaplini v. Enomoto was one, which is cited in the brief. And this Court tells us – and I think it is relevant to your question, Judge Paez – this Court tells us that when we're performing an analysis of the Pate v. Robinson due process issue, when we're trying to determine whether or not there was sufficient evidence of competency to require a hearing, the proper test, we don't perform a balancing test. We don't determine how much evidence was there of incompetence and weigh that against the evidence of competence. We look only, we direct our attention to the evidence, we gather the evidence showing incompetence, and we only analyze that without resort to any conflicting or contradictory evidence. And we look at the evidence gathered regarding incompetency and make our decision as to whether or not that was sufficient to require a hearing. And the last point that I'd like to raise is, it's another legal point, and it has to do with whether or not the AEDPA, the AEDPA standard of review, even applies in this case. It's not something that was discussed at length in the briefs, but it's something that's been bothering me, and I wanted to just share this thought with the court, that when we have a situation, the trial judge, the magistrate made clear that he said, geez, this evidence of incompetence is powerful, but if I wasn't constrained by the AEDPA standard, I think I would find in favor of you guys. I think that there would be, that there was an error that was made, but I just can't say that it was unreasonable.  But what do we do in a case where the federal appellate court sends the case back to the federal district court to determine what the appropriate facts were, and after we collect those facts, we ask the federal courts to make a determination as to the reasonableness of the trial court's fact-finding determinations. We think that's a difficult thing to ask. We think that that's illogical. And whether or not the AEDPA standard applies, Your Honor, we'd suggest that the evidence of incompetence in this case was overwhelming. Great. What more did you learn on the remand in terms of facts that we didn't already know that were in the record? What more? I'm sorry. I'm just curious. What more? The facts that we alleged were more along the order of an offer of proof, where we went back and found all the medical records and found the details of the drugging and all of the medical opinions stating how mentally ill Mr. Maxwell was. And we were able to essentially, at the evidentiary hearing, get all these matters introduced into evidence to confirm everything that we had suggested, which we presented through a habeas petition in state court, but was really ‑‑ But the trial court judge knew that he had been placed on a 72‑hour hold and that they had ordered a ‑‑ extended it to 14 days, right? He made reference to that, yes. He knew that? He knew that fact, and he was willfully blind. He said that he wanted to make a record that was going to be as clear as possible, and what he did was to make no record at all. In fact, the state made an issue of the fact that the notice of certification that there was a 14‑day hearing was not before the trial judge, when in fact the record shows that defense counsel at the time of the hearing in court said, Your Honor, I've got a notice here, and there are some scribbled notes on it which indicate that Mr. Maxwell is now being subjected to a 14‑day hold. Right. We have that document. It's a matter of record. That could only have been the notice of certification. It could be nothing else, and so ‑‑ Well, the judge knew about it because he informed the jurors that he wasn't there. He had to ‑‑ Right? Yes, well, it was ‑‑ Because the trial took place while he wasn't there. The trial took place. He was never seen. He was convicted of murder having never been seen by his jury while he spent the lion's share of that time as an ‑‑ having been committed by the state to the psychiatric ward of the hospital, and yet in light of that evidence, the trial court found based on 18‑month earlier non‑recent psychological reports that Mr. Maxwell was faking, and the judge took the opinion that that was not going to happen to him. He was not going to be ‑‑ no one was going to pull the wool over his eyes and the unanimous opinions of the medical personnel that were examining him at that time be damned. Unless the Court has any further questions, I'll reserve what time I have. All right. Thanks. May it please the Court, California Deputy Attorney General Colette Cavalier, for a respondent. Maxwell asks the Court to look at certain evidence in isolation to freeze the fact that certain points of time that are most favorable to him, but the trial court had a whole array of facts. As the Supreme Court stated in drope, there are no fixed immutable signs that invariably support a finding of incompetence, and in this case we have one of those cases where the facts and circumstances were mixed and there was no clear answer. The judge has an ongoing obligation, correct? Yes, and in this case ‑‑ That's pretty clear from the Supreme Court's statement. It's very clear, and it's very clear from this record that the trial court was very aware and attuned to that continuing obligation very early in the process. I think a reasonable jurist would have said, well, let me see the reports from the hospital when he was ‑‑ when his hold was extended to 14 days. It's interesting. The timeline on that sheds a little bit of light on that answer, and I'd like to go through that just briefly. It looks like the notice of certification was issued on Thursday, January 15th. And there's no record on those days proceedings that that was brought to the court's attention until the following Tuesday, January 20th. It was a holiday weekend. There were no proceedings held on Friday. The court resumed its session on Tuesday, and on Tuesday the court indicates that it's aware that he's been placed on that 14-day hold. But that same day, the court also notes ‑‑ I think a reasonable jurist might say, well, we might want to see what this is all about. And that's what he said. He said that I want Maxwell produced the next day, and I want the physicians to tell me what's going on. I want their ‑‑ the treating physician to give me a brief summary of their impressions so that we can see what's going on. But at the same time, the court indicates that the bailiff has reported that the hospital has released him, but he's just refusing to come to court that day. So the next day, Wednesday the 21st, Maxwell's present, and all the hospitals provided is that he was cleared to come to court. But he's present. Counsel's visit with him. The trial court inquires of defense attorney whether he is declaring a doubt or making a motion pursuant to Penal Code Section 1368, and counsel says no. At that point, the trial court was satisfied that they could proceed, and that determination was not objectively unreasonable under ADEPA. Well, you know, it's the trial judge's duty to see to it that particularly in a criminal case, particularly in a murder case, that the defendant is competent to stand trial. And it seems to me that there are so many indicators here that while this trial was ongoing and he wasn't even in court and the trial proceeded, that the judge was not carrying out his responsibility. It's not a big deal. You just have someone like Maxwell examined again by one or two psychiatrists or psychologists, and then you go on from there. And he apparently has had numerous relapses, and this has been ongoing for a long time. He's in, he's out. So I think that's what he should have done. I think that's what he could have done. And it would have been, it's what he could have done, and that would have been a reasonable determination of the facts also. But in this case, looking at the prior psychological evaluations, which while old, didn't just say he was competent. They said that he was competent in feigning his psychosis and grossly embellishing his symptoms. And it's not that he just wasn't there. It's that the week prior to during pretrial proceedings, he'd refused to be there. He'd indicated to the court that he wasn't willing to proceed. He wasn't going to conform his conduct. Well, what's the problem with he's locked up with sending someone up there who's a specialist in that field to examine him again, or even examine him every day? I don't think there's a problem with that. I just, under the standard that we're looking at, the decision not to do that was not objectively unreasonable. Let me ask you. No, I think it was. Let me ask you. The 72-hour hold that was accomplished by the sheriff, what did the sheriff have to assert? What was that determination all about? A 5150 hold under Welfare and Institutions Code 5150 is to evaluate whether he's a danger to himself or others. It's a 72-hour hold for observation and evaluation. And then something happens with that, right, when the doctors take a look at him, correct? Yes. Under penal code section, I believe it's 4011.6, they are required to transmit a report back to the custodian as to the results of that evaluation. And that said, we think he needs further evaluation or further treatment, correct? I'm not sure that that's correct. Was there a 14-day hold placed on him? There was a 14-day hold placed. And that could only come if there had been some determination. Right. What I was talking about was the 4011.6 report, which we don't have in the record. We don't know what was sent back to the custody, but we do know instead they placed him on a 14-day hold, which is if I need the hospital staff. So they thought there was something amiss here, correct? Yes. They did. But it's two different types of evaluations, both having to do with mental illness. But this was not an evaluation adduced for the purpose of determining competency to stay on trial. But the point is that if you think if the judge had been aware of that, I mean, that's just why wasn't that just a reasonable juror should say, well, you know, we probably ought to check again whether or not this guy is competent. He was aware of that, and he did. But from saying he's aware of what the significance of that is under California law, why isn't that enough to trigger the judge to say we better do a mental competency evaluation? Because by the time he finds out about it, Maxwell has been cleared to go to court. He's present. His counsel has seen him. He's interacting with the court. He seems functional. He's answering the court's question. He's responding. And defense counsel, when asked point blank, do you intend to make a motion pursuant to Penal Code Section 1368, his counsel says no. Do we know if counsel knew what the evaluations were all about? We know that counsel was aware of the 14-day certification because he was the one that brought it to the court's attention. Was Maxwell in for the full 14 days? No. The notice was issued on the 15th, and he was cleared to go to court on the 20th, and he was discharged on the 22nd. How many days of trial did he miss? I believe he was out the full day from the 12th to the 12th, 13th, 14th, 15th. They were out of session Friday the 16th and Monday the 19th. He was cleared to go to court on the 20th. Same as three days of trial? Four. Four days of trial. And the trial just proceeded on without him? Yes. It was a multi-defendant trial with two separate juries. Some of those proceedings may or may not have had to do with Maxwell. It's not entirely clear from the record. But counsel indicated to the trial court throughout those four days that he was interacting with Maxwell, that he had visited him at the hospital, and he, on the 13th, after he was the first 72 hours, he explicitly says, no, I'm not requesting a 1368 motion. And then again, on Wednesday, the 21st, he says, no, I'm not requesting a 1368. Would you understand the mandate, or prior mandate, to have required the district court to do? I think that the mandate was to look at the reasonableness of the trial court's fact-finding process under ADEPA. What the trial court knew, which was pretty much what was presented at the evidentiary hearing, and what he should have known, what was reasonably available. And what was produced at that was not just the medical certification, but also the judge's testimony that he observed based on his observation of Maxwell in the courtroom, and the prosecuting attorney's and the defense attorney's testimony as well, which all supported that they found no, nothing to suggest that Maxwell was not competent to proceed during that time. So is it your view that what the district court did on remand was consistent with the mandate? Yes. Okay. Okay. Thank you. Thank you. Any rebuttal? I just need 30 seconds. I would just like to say that the attorney general asks this court to do what this court has told us in the cases that it may not do, which is to conduct the weighing analysis. We need to restrict the focus to the evidence of incompetence, which is overwhelming. And in response to Judge Piazza's question, the State absolutely had the burden of proving a level of mental illness before converting Mr. Maxwell's 72-hour hold to a 14-day hold. They overcame that burden. And to suggest now that there was insufficient evidence. Who did they make that showing to? So he's in for 72 hours at the psychiatry. Right. And the law requires once they make that. Who makes that? The hospital, the staff? The state hospital makes that determination, and they're required by law to send notification to the trial court regarding any pending matters that that has happened. And so I would also let me just conclude by saying that we don't think whether Mr. Maxwell missed, whether it was four or five days, of missing that much time of his murder trial while being confined in the state psychiatric hospital against his will and being administered massive doses of psychotropic medication at that time. We don't believe that's a small thing. We think that it's a very serious matter.
judges: Pregerson, Noonan, Paez